JOHN P. ROSSMAN, TREASURER OF THE TOWNSHIP OF McMILLAN, v. WILLIAM R. ADAMS, CIRCUIT COURT COMMISSIONER FOR THE COUNTY OF ONTONAGON.

*Taxes—Timber lands—Injunction to restrain waste.*

Act No. 223, Laws of 1889 (3 How. Stat. § 1170$n$1), providing for the issuance of injunctions, at the suit of township treasurers, to restrain waste upon lands on which taxes are due and remain unpaid, is construed as follows:

*a*—It was not intended by the Legislature that the imperative mandate of the statute should be defeated by a showing by affidavit that the tax could have been collected by other process, or that the owner of the lands, or of the timber thereon, did not intend to commit any waste within a year or any other period, or that, if he should cut what timber he intended to, there would still be value enough in the land or remaining timber to pay the taxes assessed against the lands; citing *Caldwell v. Ward,* 83 Mich. 16, 17.

*b*—Where none of the taxes are claimed to be illegal except the township tax, there can be no hardship in issuing the injunction, as this tax can be paid under protest, and the rights of the parties thereby preserved.

*Mandamus.* Submitted March 10, 1892. Granted March 18, 1892.

Relator applied for *mandamus* to compel respondent to issue injunctions to restrain waste upon lands on which

taxes are due and remain unpaid. The facts are stated
in the opinion.

*Button & Norris,* for relator.

*Hubbell & Gray,* for respondent.

PER CURIAM. The following is the stipulation of
facts in this case:

"It is stipulated and agreed that the following
statement of facts shall have the full force and effect of
an answer made by said respondent upon an order to
show cause why a peremptory *mandamus* should not issue
against him, and that the matter of this application may
be decided by this Court solely upon said facts, viz.:

"March 4, 1892, complainant, by Button & Norris,
his solicitors, presented to respondent the fourteen bills
of complaint, copies of which are attached to the appli-
cation in this matter, and also three other like bills,—
one against Henry Finnegan, one against Robert Trotter,
and one against Philip McKernan; the said Diamond
Match Company being joined as a co-defendant in each
of said three suits. On said day the said Diamond Match
Company, by Hubbell & Gray, its solicitors, appeared
also before respondent upon due notice and by consent
of complainant's solicitors, and filed the affidavit of said
company's general manager in each of said cases, and
thereon objected to respondent's allowing the injunction
as prayed, for the reason that great and irreparable
injury would be done the said company by the granting
thereof, and that such affirmative action by respondent
would therefore be inequitable and unjust, and would in
no way benefit complainant.

"Said affidavits showed the following cases, respectively:

"In two cases against Maggie Trotter and Mary A. Trotter (said
Diamond Match Company being joined as a co-defendant in each
thereof), that said company had purchased of each of said defend-
ants the pine timber on said land, and the right to cut and remove
the same, but that it was not then cutting the same, nor did it
intend to.

"In said case against said George W. Pearsons (the said Dia-
mond Match Company being joined therein as a co-defendant),
that said company had purchased the pine timber on said land,
and the right to cut and remove it, but was not then cutting the

same, nor did it intend to this year; and, further, that during all the time the roll was in complainant's hands, as stated in said bill, ever since that time, and now, said company was, has been, and is indebted to said Pearsons in a sum greatly exceeding the amount of the tax on said lands, over and above all exemptions and legal set-offs.

"In the cases against Frank Robinson, David Crowell, John McCormick, and Talfour L. Jeffers, respectively (said Diamond Match Company being joined as a co-defendant in each thereof), that said company had purchased of said several parties the pine timber on the lands owned by them, as stated in the bills in said respective suits, and the right to remove the same; that a fire had passed over said lands, and burned certain of the said timber thereon, and that, unless the same was at once cut and manufactured, it would be a total loss to said company (the value of said burned timber in said four cases being upwards of $10,000), and that said company was then engaged in cutting and removing said burned timber only, and was not cutting and did not intend to cut any of the unburned timber on said lands this year; and that the said unburned timber on said lands in each case was worth the said unpaid tax thereon, many times over; and, further, that in each of said cases said company had been indebted to said parties, the owners of said lands, severally and respectively, in sums greatly exceeding the amount of said taxes, respectively, during all the time the said roll was in complainant's hands, as stated.

"In the respective cases against the Keweenaw Association, Limited, Sylvester Kinney, and the James C. Ayer Estate (said Diamond Match Company being joined as a co-defendant in each thereof), that said company had purchased the timber on said lands, and the right to cut and remove the same; that a portion of said timber had been burned, and that unless the same was cut and removed at once, and manufactured, it would be a total loss to said company; that said burned timber in said three cases was of the value of $6,000 and upwards; that it was engaged in cutting and removing said burned timber only, and did not intend to cut or remove any of the unburned timber this year; that the said unburned timber on said lands was in each case of sufficient value to pay the unpaid taxes thereon, many times over.

"In the case against Michael McGuire (wherein said Diamond Match Company was joined as a co-defendant), the same facts as in the last foregoing affidavits; and, further, that during all the time the tax roll was in the hands of complainant, ever since then, and now, said company was, has been, and is indebted to said McGuire in an amount greatly exceeding the said unpaid tax, over and above all exemptions and legal set-offs.

"In the case against George E. McLaughlin, that said company had purchased of him the pine timber on said land, and the right to cut and remove the same; that all the uncut timber thereon, about 300,000 feet, had been burned, and, unless the same was cut and manufactured at once, it would be a total loss to said company; and that it was then engaged in cutting and removing the same.

"In the case against John Diffin (wherein said Diamond Match Company was joined as a co-defendant), the same facts as in the last foregoing affidavit; and, further, that during all the time the roll was in complainant's hands, ever since then, and now, said company was, has been, and is indebted to said Diffin in an amount greatly exceeding the unpaid tax, over and above all exemptions and legal set-offs.

"In the case against the said Diamond Match Company alone, that said company was not cutting or removing any of the timber on said land, and did not intend to this year; and, further, that during all the time the roll was in complainant's hands, ever since then, and now, the said company had, has had, and has personal property in said county of Ontonagon, available for levy by complainant or by virtue of any process, and entirely unincumbered, of the value of upwards of $100,000.

"In said three cases against Henry Finnegan, Robert Trotter, and Philip McKernan, that all the timber on said lands had long since been cut and removed, and that said company for that reason had ceased logging, and would not at any time thereafter further log on said lands.

"And in each of said affidavits the further statement was made that, as to the township tax, said company had been informed, advised, and believed that the same was invalid.

"And thereupon, after argument by counsel for said respective parties, and upon consideration of the premises, said respondent refused to allow the said injunctions as prayed for.

"*Dated March* 10, 1892.

"HUBBELL & GRAY,
     Solrs. for Diamond Match Co.
"BUTTON & NORRIS,
     Solrs. for relator."

The statute (Act No. 223, Laws of 1889) provides that

the "township treasurer *shall be entitled* to an injunction to restrain waste" on lands where the owner "shall neglect or refuse to pay any tax assessed" upon the same, "when it shall appear that such lands are chiefly valuable for the timber being, standing, and growing thereon." *Caldwell v. Ward*, 83 Mich. 13, 88 Id. 378. Upon the facts above stipulated the injunction should have been granted in each case. There in nothing shown to warrant the respondent's order denying the same.

It was not intended by the Legislature that the imperative mandate of the statute should be defeated by a showing by affidavit that the tax could have been collected by other process, or that it was not the intention of the owners of the lands, or of the timber upon them, to commit any waste within a year or any period, or that, if they should cut what they intended to, there would still be value enough in the land or timber to pay the taxes assessed against the lands. *Caldwell v. Ward*, 83 Mich. 16, 17.

There can be no hardship in the issue of these injunctions. It is not claimed that any of the taxes assessed against these lands are illegal, except the township tax; and this can be paid under protest, and the rights of the parties thereby preserved.

The writ of *mandamus* will issue, commanding the respondent to issue the injunctions as prayed in relator's petition.